# WALKER *vs.* CLAY AND CLAY.

1. When a note is given, payable at a particular future day, upon the consideration that the payee agreed to perform certain services for the maker, and no time is fixed for the performance of the services, the maker cannot defeat a recovery, on the ground that the payee has not yet rendered the entire services contemplated by the agreement, when the payee is in no default, but able, ready and willing to comply with the contract on his part.

2. Where a note is given, payable "six months after date," "for value received," in consideration of the payees' agreement to perform certain services as attorneys at law for the maker, and no time is fixed for the performance of the services, parol evidence is inadmissible to show that the note was not to become payable until the contemplated services were rendered.

3. Although the law will sometimes rescind a contract in favor of one party, on account of the default or misconduct of the other, yet when he who seeks a rescission can allege no default or misconduct against the other party, he cannot at his election annul it.

4. When *non est factum* is pleaded to a declaration on a promissory note, and the defendant has introduced evidence tending to show that he was insane, "at, before and after the time of the execution of the note" by him, the plaintiff may rebut this evidence by proof of the defendant's condition *seventeen* days after its execution.

5. The appointment by the court of a guardian *ad litem* for a lunatic defendant, is not error, when the record shows that the defendant appeared and pleaded "by his guardian *ad litem* and by attorney;" especially, when the record indicates that the guardian was appointed at the instance of the defendant's attorney.

6. In a suit against a lunatic, the judgment is properly rendered against the lunatic himself, and not against his guardian.

ERROR to the Circuit Court of Jackson.

Tried before the Hon. THOMAS A. WALKER.

This was an action of DEBT by the defendants in error against the plaintiff, on a promissory note of which the following is a copy, viz:

"Six months after date, I promise to pay C. C. Clay & C. C. Clay, Jr., four hundred dollars, for value received of them, this 29th September, 1848."

(signed)     GEORGE WALKER.

"Test. J. M. McDuff."

After the cause was regularly in court, a suggestion appears to have been made to the court, that the defendant had become a lunatic, and a motion was made to have a guardian *ad litem* appointed, to conduct the defence of the suit. The court entertained the motion, and on proof being made to the court that Daniel M. Martin was his regular guardian, acting under the appointment of the Chancellor, the said Martin was appointed his guardian *ad litem*, and thenceforward appeared by attorney, as did the defendant, and defended the said suit.

The defendant pleaded, first, *nil debet*, on which issue was joined; secondly, a total failure of consideration, alleging that the note was given for certain services to be performed by the plaintiffs, as attorneys at law and solicitors in chancery, in and about a certain chancery suit then pending in the Chancery Court of Jackson, and a certain indictment for murder then pending against said Walker in the Circuit Court of said county, and that said services had not been performed. To this plea there was a replication, denying that the consideration of said note was, in any part, an agreement by plaintiffs to render services in a chancery suit, but confessing that it was the defence of said Walker under the said indictment pending against him for murder; and averring a partial performance of the services agreed to be rendered by them, and a readiness to perform entirely what they had agreed to do, whenever said Walker should be tried. The defendant demurred to this replication, but the demurrer was overruled. He then rejoined, in effect, that, at the next term of the Circuit Court after the execution of said note, said Walker was insane and a lunatic, and had so continued up to the time of pleading, and was incapable of being tried, in consequence thereof. To this rejoinder the plaintiffs demurred, and their demurrer was sustained.

The defendant pleaded, thirdly, a partial failure of consideration, averring nearly the same facts as in the second plea, and alleging that said plaintiffs had not performed any servi-

ces in the said chancery suit. On this plea issue was joined.

The defendant pleaded, fourthly, *non est factum*, alleging said Walker's lunacy at the time of the execution of the note. On this plea issue was also joined.

The defendant pleaded, fifthly, that the consideration of the note was, the plaintiffs' undertaking to defend said Walker on the trial of said indictment then pending against him, and that it was the understanding and expectation of the parties, at the time said note was executed, that said Walker would be tried at the then next term of said Circuit Court; and for this reason said note was made payable at six months, in order that it might become due and payable when the said services should have been entirely performed; and averring, that before the said next term of said Circuit Court, said Walker had become insane, and was so pronounced by the proper authorities on a commission of lunacy, and that he was still insane up to the time of pleading, and had not, for that reason, been brought to trial, and the plaintiffs had not yet defended him according to their agreement. The plaintiffs demurred to this plea, and their demurrer was sustained.

The defendant pleaded, sixthly, the same facts as to the consideration of the note, the lunacy of Walker, and his inability in consequence thereof to be tried under the said indictment, with these additional averments: That defendant had offered to pay said plaintiffs a reasonable compensation for the services which they had rendered in and about said prosecution, and claimed from them a rescission of the contract under which said note was given; that plaintiffs refused to rescind the contract; that he had offered said plaintiffs the sum of fifty dollars, which was a reasonable compensation for the services rendered by them, and claimed a rescission of the contract, as above stated. To this plea there was a demurrer, which was sustained by the court.

On the trial below a bill of exceptions was signed by the presiding judge, at the instance of the defendant, from which it appears, that said defendant "offered proof tending to show that said Walker was insane, at, after and before the time of the execution of said note. Plaintiffs, to rebut this testimony, introduced one Austin, who stated, that he had seen and conversed with said Walker, almost daily, for sev-

eral weeks before and several weeks after the execution of said note, and had transacted business with him, particularly about seventeen days after the execution of said note. Said Austin described Walker's conversation and conduct on that occasion, for the purpose of showing his sanity, both before and after the execution of said note. The defendant moved to exclude that part of Austin's testimony which related to his interview with Walker seventeen days after the execution of the note, on the ground that it was illegal and irrelevant; which motion the court overruled," and the defendant excepted.

The defendant also introduced evidence tending to show, substantially, the facts set forth in his sixth plea; and prayed the following charge: "That, if the jury believed the above facts, they should find for the defendant; which charge the court refused to give, and the defendant excepted." The jury having found a verdict for the plaintiffs, the court rendered judgment against the defendant.

The errors assigned are:

1. The ruling of the court on the several demurrers;

2. The matters shown in the bill of exceptions;

3. The appointment by the court of a guardian *ad litem ;*

4. The rendition of judgment against said Walker, who was then a lunatic.

MORGAN & WALKER, for plaintiff in error:

1. It was competent to show what was the consideration of the note sued upon. Long v. Davis, 19 Ala. Rep., 801; 10 ib., 163; 7 ib., 798; 11 ib., 913; 2 ib., 280; ib., 135; 6 ib., 146.

2. The consideration of the note was a general retainer of the defendants, as attorneys at law, in the defence of the prosecution for murder. From this retainer there arose, at least, the implied obligation that the attorneys would defend the suit, and until this obligation is performed the attorneys could only recover a just apportionment of the note. Long v. Davis, *supra ;* 7 Term R., 121; 10 B. & C., 877; 2 Bailey's Rep., 488; 9 Moore, 159; 3 Watts, 331; 8 Mees. & W., 858; 2 Smith's Leading Cases, 15; 10 East 564; 1 Camp., 78.

3. An express agreement to defend the prosecution for

murder need not be proven in this case, but would be implied from the retainer and the circumstances of the case. The note was made at one term of the court, to perform services which it was expected would be required at the next term at furthest.   15 Mass. 1 ;  9 ib.,  78.

4. An express agreement is set up in the pleadings, as the consideration of the contract, (not as a condition or qualification,) and the entire performance of that agreement must be shown, to entitle the attorneys to recover the entire amount of the note.   Walke v. McGehee, 11 Ala., 276.

5. If it was the intention of the parties to make the day of payment of the note to happen after the services, which were the consideration of the note, were to be performed, no action could be maintained for the money before performance.   4 Rand. Va. Rep., 355.   These facts are averred in the pleadings, and do not infringe at all upon the rules relating to the admissibility of parol proof to vary and contradict a written instrument ; if the consideration can be shown, it follows that when it is shown it explains the intent of the parties and gives effect to the contract.   The intent of the parties, as expressed in the note, is, that the money shall be paid six months after date ; but the consideration is, that the plaintiffs will defend the prosecution for murder.   The law looks to the consideration, to determine how far it will give effect to the contract, and if it has failed the contract fails ; if it has failed in part, the contract fails in part.   Thus the terms of the contract are not varied by the proof.   If the plaintiffs had died, no recovery could be had, except so far as the consideration had been performed, and so of the defendant ; and so if the defendant becomes lunatic, and it is impossible for the plaintiffs to perform the whole undertaking without the fault of defendant.

6. It was certainly the duty of the court to allow the defendant to show the circumstances under which the note was made.

7. The insanity of the maker of the note was a contingency in reference to which the parties did not contract, and it is as much a visitation of God, as the death of the maker of the note would have been.   Is it a presumption of law that an insane man will become sane ; and if so, should not the plain-

tiffs have waited until the defendant was in a condition to take some benefit from his contract? Suppose, after the recovery in this case for unperformed services, the plaintiffs should die, and the defendant should be restored, would the death of the plaintiffs give the defendant a right to recover back the money paid?

8. The judgment is erroneous, because rendered against the lunatic himself in person.

9. A court of law has no power to appoint a guardian *ad litem* to defend a case; not having the power, it makes no difference if the guardian consents to act, as he cannot bind the estate of his ward. The defendant's counsel could not consent for him in such a matter.

C. C. CLAY, Jr., *contra :*

1. The fifth plea is bad, for it alleges a contract inconsistent with and repugnant to the note. The note is payable six months after date; the plea alleges, that the agreement was that the note should be paid at the same time the defence was made, which might happen at a different time from the maturity of the note. West & West v. Kelly's Ex's., 19 Ala., 359. It alleges that the note was payable "on condition and for the consideration that plaintiffs would defend him," &c. If this be construed to mean, that the note was only payable on condition that plaintiffs defended him at the Spring term, 1849, it would destroy the legal effect of the note, and would, moreover, be absurd. 19 Ala., 354. If it means that the promise that plaintiffs would defend him was the consideration, that is sufficient to support the action. 11 Ala., 276; 10 Johns., 91, (94.) But no time for the trial of Walker, or the defence of him by plaintiffs, was or could be fixed by the parties, or is alleged in the plea; and when no time is fixed for the performance of that which is the consideration of the note, the action may be brought before performance by plaintiffs. 1 Chitty's Plead., 323. The time of payment is fixed by the note, and might happen before the defence of the maker, which was its consideration. Hence, making the defence was not a condition precedent to the right to demand the money. See above cases, and Jones v. Somerville, 1 Port., 457; 1 Ala., 136.

2. The sixth plea is obnoxious to all the objections to the fifth plea. The same legal principles and authorities above cited apply to it; moreover, Walker's insanity did not discharge plaintiffs' obligation to defend him, and, therefore, he is not discharged from his obligation to pay the note; otherwise the mutuality of the contract is destroyed. Even Walker's death would not have defeated plaintiffs' right to recover. The contract could not be rescinded, unless the parties could be placed in the same situation, and on the same terms existing when the contract was made, except by mutual consent. This could not be done, because plaintiffs had already performed some services, as the plea admits, and were prevented by his retainer of them from taking a fee on the other side. Chitty on Con., 742; 2 Ala., 181; 3 ib., 237; 9 ib., 452. Besides, how could he rescind, if insane, or his guardian or attorney rescind for him? If plaintiffs should die after recovery in this case, and before defending Walker, and he should be restored, (as supposed by the counsel,) he would have the right to recover the money paid; and, if he should be restored, and plaintiffs would not defend him, he would have his remedy. 1 Chitty's Plead., 323.

3. Plaintiffs' replication to the second plea was good, and defendant's rejoinder bad, for the same reasons above set forth. The character of the pleas, whether good or bad, depends on the same principles referred to above.

4. The charge asked was properly overruled, for the same reasons the demurrer to the pleas was sustained. Further, it was not warranted by anything in the pleas, or by the testimony.

5. The motion to exclude Austin's testimony was properly overruled. It was admissible. 2 Greenl. Ev., § 371; 16 Ala., 680; 17 ib., 437. At all events it was only rebutting defendant's evidence.

6. The appearance by guardian *ad litem*, or appointment of one to defend, is not assignable for error. 4 Denio, 262; 2 Saund. Rep., 336. Besides, the record shows he appeared by attorney, and judgment was rendered against him.

7. The judgment could be rendered against no one but the lunatic.

GIBBONS, J.—1. The first question of law that arises upon the pleadings, in this case, is, whether a party, who has given a note payable at a particular day, upon the consideration that the payee agreed to perform certain services for him, but without any time being fixed when the services should be performed, can, when the payee is in no default, but able, ready, and willing to comply with the contract on his part, defeat a recovery on the note, on the ground, that the payee has not yet rendered the entire services contemplated by his agreement. The simple statement of this question suggests the answer. He cannot. We do not now deem it necessary to enter into an argument to show the reasons why he cannot. These reasons, and the numerous authorities upon this subject, are familiar to the profession. It is sufficient to say, that the consideration of the note being the agreement of the payee to perform the services, and the payment of the money not being made to depend upon the performance as a condition precedent, and the payee being in no default, the note remains obligatory upon the maker. We do not mean to say, that the maker of a note may not show a total or a partial failure of consideration. He undoubtedly can. But the above question does not involve a failure of consideration, but simply a non-performance of the services contemplated by the agreement, which was the consideration of the note, without any default or omission on the part of the payee. This is not a failure of consideration, and the agreement remains mutually as binding upon the parties as it ever was.

If the payee of the note had failed or refused to perform the services stipulated, that would be a failure of consideration; but until he does some act, or omits to perform some duty to which he was bound, and which puts him in default, the consideration of the note cannot be said to have failed in any respect.

This question being thus settled, necessarily disposes of the demurrers to the plaintiffs' replication to the second plea, and to the defendant's rejoinder to the same replication; and it follows as a necessary consequence, that the court decided the law correctly in overruling the demurrer to the former, and in sustaining that to the latter.

2. It is a principle of law equally well settled that a party,

cannot introduce parol proof, to materially alter or vary a written agreement. West & West v. Kelly's Ex'rs., 19 Ala., 353. If the contract is not perfect in itself, or, in the language of C. J. Dargan in the case above cited, "if it be apparent that the instrument in writing contains but a part of the agreement entered into by the parties, then parol proof may be received to prove the entire contract; otherwise the contract could not be brought before the court. But the parts of the agreement proposed to be proved by parol, must not be inconsistent with, or repugnant to the intention of the parties, as shown by the written instrument; for, to receive parol proof of a part not reduced to writing, which is directly repugnant to the intention of the parties as expressed in the written instrument, would at once annul the rule that parol evidence cannot be received to contradict or vary the terms of a written agreement." See also Long, Ad:nr., v. Davis, 18 Ala., 801.

Let us apply these principles then to the fifth plea. It states, in addition to the matter contained in the rejoinder to the plaintiffs' replication to the second plea, that at the time the note was executed it was the understanding of the parties that Walker would be tried at the next term of the Circuit Court, and that the note should become payable at the time that the said Walker should be tried. We understand the meaning of the plea to be, that the note was not to become payable until the services contemplated by the agreement were rendered. If this is the meaning of it, (and it is the only one we can attach to it) it is repugnant to the face of the note, and makes a materially different contract between the parties. This the law will not permit. If the contract was, in effect, what the plea states it to be, it was the misfortune of the party that it was not correctly expressed in the written agreement, but a court of law has no power to reform it. The plea is bad, and the demurrer to it was correctly sustained.

3. The gist of the sixth plea is, that Walker has not been tried in consequence of his insanity, and that the guardian *ad litem* had tendered to the plaintiffs the sum of fifty dollars, averring that to be a reasonable compensation for the services which they had rendered in the prosecution pending against the said Walker, and had demanded of the plaintiffs a rescis-

sion of the contract, and that this offer was refused by the plaintiffs; but in consequence thereof the plea claims that the contract is rescinded. Waiving all questions as to the formality of this plea, and about which we express no opinion, we only deem it necessary to say, as to the subject matter of it, that as it requires in law two parties to make a contract, so it requires two parties to rescind one. It is true, the law will sometimes rescind a contract in favor of one party, on account of the default or misconduct of the other; but when he who seeks a rescission can allege no default or misconduct against the other party, he cannot at his election annul it. It requires the consent of both parties to rescind, as it did to make it. The demurrer to the sixth plea was therefore properly sustained.

4. It is insisted that the court erred in allowing the witness Austin, introduced by the plaintiffs, to testify as to the condition of Walker seventeen days after the execution of the note. The bill of exceptions shows, that the defendant introduced testimony tending to show that the said Walker was insane " at, after, and before the time of the execution of the said note." This testimony, we presume, was offered under the plea of *non est factum*, seeking to avoid the note on the ground of insanity; and we think it clear that the testimony of Austin was admissible, as tending to rebut the testimony of the defendant on this issue. 2 Greenleaf Ev., § 371; McLean v. The State, 16 Ala., 672; McAlister v. The State, 17 Ala., 434. We do not think that seventeen days after the execution of the note was too remote to render the testimony irrelevant.

5. The defendant below requested the court to charge the jury, that if they believed certain evidence set out in the bill of exceptions, they must find for the defendant. The court refused the charge, and this is also assigned for error. On looking at the evidence on which this charge was prayed, it will be found to be substantially the facts set out in the sixth plea. This plea was demurred to, and the demurrer was sustained. There was no issue before the jury authorizing this evidence to be received, and we have already passed upon the legal effect of the facts alleged in this plea. The charge was properly refused by the court.

6. It is also assigned for error that the court below appointed a guardian *ad litem* for the said Walker. Mr. Chitty says, "an idiot should also appear in person, and it is said that any one who can make a better defence, shall be admitted to defend for him; but a lunatic, or one who becomes *non compos mentis* must appear by guardian, if he be within age, and by attorney if of full age." 1 Chitty's Pl., 469; see also 2 Saund., 333, note 4, 335; Bacon's Abr., title, Idiots and Lunatics. In the case of Buchanan v. Rant, 2 Monroe, 114; the court decided that lunatics within age must appear by guardian; those of mature age by attorney. To the same effect also is the case of Amos v. Taylor, 2 Brevard, 20. On the other hand, in Allison v. Taylor, 6 Dana, 87, it was held that a judgment against a lunatic, in a case where the process was served upon him alone, and the judgment rendered by default, was not void, although the court intimate that such a judgment would be reversed on error, because the committee man was not made a party.

The record in this case shows, that the defendant pleaded both by guardian and attorney; the language is, "the said George Walker by his guardian *ad litem*, Daniel M. Martin, and by attorney, comes and defends, &c." The question then would seem to be narrowed down to this: does the simple appointment by the court of a guardian *ad litem*, although the defendant still pleads by attorney, amount to error? We have no hesitation in saying that it does not. We do not wish, however, to be understood as expressing an opinion upon a case where the record did not show that the lunatic pleaded by attorney; we limit our decision to the precise case presented by the record. Besides, the record in this case would indicate that the guardian *ad litem* was appointed at the instance of the defendant's attorney; and it never could be tolerated, that he could be heard here in assigning for error that which he had himself caused to be done below; this would be to permit a party to take advantage of his own wrong.

7. It is insisted, in the last place, that the court erred in rendering judgment against the lunatic. This objection is in some measure answered by what we have said in reference to the last noticed assignment of error. We do not see how the judgment could have been rendered against any party other

than the lunatic. It was his debt; he had the capacity, as we have seen, to appear in court by attorney, and the legal title to his estate was still in him. The guardian that was appointed to take charge of his affairs did not, like an administrator, take the legal title to any of the property or assets that came to his hands. Cameron v. Pottinger, 3 Bibb, 11; Crane v. Anderson, 3 Dana, 119. The lunatic then was the only party against whom judgment could have been rendered. Clarke v. Dunham, 4 Denio, 262.

We find no error in the record, and the judgment is consequently affirmed.