## HARRIS *vs.* ROWLANDS' ADM'RS.

1. A vendee is entitled to recover damages of his vendor for a breach of an express warranty of title to a slave, upon proving the recovery of a judgment against his vendee by one having an adverse title, and of another judgment by his vendee against himself, and that defendant was notified of the pendency of both suits.
2. When the bill of exceptions does not show whether a notice was written or verbal, the Appellate Court, construing the bill most strongly against the plaintiff in error, will presume, if necessary, that it was written.
3. An offer to rescind by the vendor, not accepted by the vendee, has no legal effect whatever on the contract, unless the offer is based on the fraud or bad faith of the vendee.
4. Where a vendee, on being informed that an adverse title was set up to the property, examines that title, and expresses himself satisfied with his own, this does not deprive him of his right of action against his vendor on a breach of his warranty of title.

ERROR to the Circuit Court of Benton.

Tried before the Hon. THOMAS A. WALKER.

THIS was an action of ASSUMPSIT by the defendants in error, as the personal representatives of one Richard D. Rowland,

against the plaintiff in error, to recover a certain sum of money alleged to be due and owing the estate of the said Rowland, by reason of a breach of warranty on a contract of sale of certain negroes made by the said plaintiff in error, to the said Rowland in his life-time. There was a verdict and judgment for the plaintiffs in the court below, and the defendant brings the case to this court.

On the trial below a bill of exceptions was allowed, from which it appears that the plaintiffs below, in order to sustain their case, offered in evidence a bill of sale, of which the following is a copy, to-wit:

" Received of R. D. Rowland five hundred and fifty dollars, in full for negro woman Rhoda, aged about nineteen years, and her boy child, Columbus, aged about two years, also her girl child, aged about five months; all of said slaves I warrant sound, titles good, and slaves for life, this 31st January, 1846.

    (Signed)                 MARY HARRIS,

                       per JAMES CROW."

The plaintiffs also introduced two records, showing that one Rutledge had recovered the property mentioned in the bill of sale from C. L. Shelton, the vendee of Rowland with warranty of title; that said C. L. Shelton had recovered the same from R. D. Rowland, plaintiffs' intestate; that said judgments had been satisfied, and that defendant had notice of the pendency of both suits.

Defendant introduced a witness, who proved that, as the agent of defendant, he called on said R. D. Rowland, before the negroes mentioned in the bill of sale were delivered to said Rowland, and proposed to him a rescission of the sale, on the ground that Rowland had not paid enough for the negroes; which Rowland refused. The witness also proved that afterwards, in June following, but as witness thought, after Rowland had sold the negroes to Shelton, he, as the agent of defendant, again called on Rowland, and informed him that Rutledge was about to commence suit for the negroes, and again proposed to Rowland to rescind the sale; which Rowland also refused. It was also proved that, before Rowland sold said negroes, and while he had them in possession, four or five days after the sale, he was informed by a witness, not the agent of defendant, of the claim that Rutledge was setting up to said negroes; that he, Rowland,

made an examination of the records of the Circuit and Orphans' Court of Benton County in reference to Rutledge's title, and after said examination expressed himself satisfied that Rutledge had no title to the negroes, and afterwards carried them off and sold them to Shelton. This was all the evidence in the case; and there being no conflict in the proof, the court charged the jury that, if they believed the evidence, they must find for the plaintiffs; to which charge the defendant excepted, and here assigns the same for error.

S. F. RICE, for plaintiff in error:

1. The vendee of a chattel, who has conveyed all his interest therein with warranty, cannot maintain an action against his vendor for a breach of the warranty subsequently occurring, until he is compelled to pay damages on his own warranty, or obtains a release of the same from his vendee. "He is liable on his warranty, it is true, but before he has suffered, he cannot sue for indemnity." "He cannot sue until he is first damnified.—Wheeler v. Sohier, 3 Cushing's R. 219.

All the evidence adduced on the trial is set forth, but does not show that Rowland or his administrators were sued or paid any thing before this suit was commenced. A suit commenced, or payment made after this suit was commenced, would not enable them to sustain this action. The charge of the court was therefore erroneous, because it entitled the plaintiffs below to a verdict, although the suit against Rowland, and the payment of the judgment against Rowland, occurred after this suit was commenced.

2. Mere "notice of the pendency" of a suit against a vendee, will not make the recovery in that suit against the vendee evidence in a subsequent suit by the vendee against the vendor, to prove either a want of title or damages. It is certainly not evidence to prove both want of title and damages. Before the recovery in such suit can be regarded as evidence on both these points, it must appear that during its pendency the vendee vouched the vendor; called on him to defend him in that suit, or to defend the title.

A vendor might have notice of the pendency of a suit between A and B, and might not know the subject matter of the suit. He might have notice of the pendency of a suit against his ven-

dee, without knowing that his vendee was sued for the property sold him, or that he was looked to or relied on by his vendee to defend the title. He cannot be put in default by merely showing that he had "notice of the pendency" of a suit against the man to whom he had sold a chattel.

If a vendee wishes to make a recovery against him evidence to prove want of title and damages in a subsequent suit by him against his vendor, he must call upon, or notify, or vouch his vendor in writing during the pendency of the first suit, to defend that suit, and inform him that the title to the property bought by him and warranted to him is drawn in question. This is fair as well as lawful. A mere notice of the pendency of a suit is too general and indefinite to amount to any thing, especially when it does not appear how the vendor got such notice, or who gave it. The vendee ought to give notice.—Hampton v. Shehan, 8 Ala. 942; Lewis v. Peake, 7 Taunt. 153; Salle v. Light, 4 Ala. A verbal notice is insufficient.—Hunt v. Langstroth, 4 Hals. R. 223.

3. The evidence did not warrant the charge given, and the judgment ought to be reversed; for such a charge ought never to be sustained, unless the evidence clearly shows the right to recover.

MORGAN & WALKER, contra :

1. The contract was complete when the bill of sale was executed, at all events, and an offer to rescind should have been made before that time. But there was no pretence for the offer to rescind, except that the price was too small which Rowland was to give for the negroes.—Freeman v. Baldwin, 13 Ala. 246; Gillespie v. Battle, 15 Ala. 276.

2. The notice to plaintiff in error of the pendency of the suits, was sufficient to make the records evidence against her.—1 Johns. 517; 6 Johns. 158; 5 Wend. 535; 13 Johns. 224.

GIBBONS, J.—The sole question presented by the bill of exceptions is, whether or not the charge of the court below to the jury was correct.

The case presented by the bill of exceptions, is that of a vendee suing his vendor for breach of warranty of title on a sale of negro property made by the latter to the former, with express

warranty of title. The proof shows that a recovery had been had against the plaintiffs' intestate, by one Shelton, on a warranty of title to the same property to him, and also that one Rutledge had recovered the property from the said Shelton on an adverse title; that the said judgments had been satisfied, and that the defendant was notified of the pendency of both suits. On the case thus stated, the law is in our opinion with the plaintiffs.

It is insisted, however, that the notice to the plaintiff in error was not sufficient in order to render the records of the recoveries had against Shelton and the plaintiffs' intestate evidence in this cause; and that a mere verbal notice is not sufficient in any case. The answer to this objection is two-fold: first, the records were offered in evidence, and received in the court below without objection; and, second, it does not appear whether the notice to the plaintiff in error was by parol or in writing. On the principle that a bill of exceptions is to be taken most strongly against the party excepting, we would intend, if it were necessary, in the present state of the bill of exceptions, that the notice was in writing. The only mode in which that presumption could be rebutted would be, by stating specifically in the bill of exceptions the kind of notice that was proved to have been given to the plaintiff in error. As to the question whether or not in such a case a parol notice would be sufficient, we decide nothing in the present case, as in our opinion that question is not legitimately presented.

Nor does the proof offered by the defendant, as shown in the bill of exceptions, alter the legal aspect of the case made by the plaintiffs in the court below. A mere offer to rescind a contract by one party, not accepted by the other, has no legal effect whatever upon the contract, unless the party making such offer bases the same upon the fraud or bad faith of the other party. In such cases, the law considers an offer to rescind as equivalent to a rescission. But when the offer is not based upon the fraud of the other party, or upon some breach of contract or duty on his part, the mere offer to rescind refused by the other party has no effect whatever upon the contract.—Walker v. Clay & Clay, 21 Ala. 797. This would apply as well to the offer made before the slaves were delivered, as to that made after such delivery; but the offer made before such delivery, if there was any

virtue in it, would be waived by the subsequent delivery of the property and execution of the written contract.

Nor does the fact that the plaintiffs' intestate, Rowland, on being advised that Rutledge set up title to the property, examined that title, and expressed himself satisfied with his own title, make any difference as to his right of action against the defendant below. This right of action arose upon the warranty of the defendant, and nothing but a distinct waiver on the part of Rowland could deprive him of it on a breach of that warranty so made by the defendant. This the testimony does not pretend to prove.

We find no error in the record, and the judgment is affirmed.